LAW OFFICE OF MARY-ALICE COLEMAN
MARY-ALICE COLEMAN, SBN 98365
MICHAEL S. AHMAD, SBN 231228
1109 Kennedy Place, Suite #2
Davis, CA 95616
Telephone:  (916) 498-9131
Facsimile:  (916) 304-0880

Harvey Sohnen (SBN 62850)
Patricia Kelly (SBN 99837)
LAW OFFICES OF SOHNEN & KELLY
2 Theatre Square, Suite 230
Orinda, CA 94563
Tel. (925) 258-9300
Fax (925) 258-9315
Email: netlaw@pacbell.net

Attorneys for Plaintiffs **ANDREA SEWELL**,
**CONRAD SILVA**, and **EDITH VIERA**
individually, and on behalf of all others similarly situated

## UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREA SEWELL, CONRAD SILVA, and EDITH VIERA, individually, and on behalf of all Others Similarly Situated,<br><br>            Plaintiffs,<br><br>      v.<br><br>STATE COMPENSATION INSURANCE FUND<br><br>            Defendant. | Case No. 3:13-cv-00588-TEH<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL FOR CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS ACTION SETTLEMENT**<br><br>Judge:  Thelton E. Henderson<br>Courtroom: 12<br>Date: July 21, 2014<br>Time: 10:00 a.m. |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION..................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR

PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT ..............................................2

I.      INTRODUCTION..................................................................................2

II.     ALLEGATIONS AND PROCEDURAL BACKGROUND........................................3

        A.      Procedural History.....................................................................3

        B.      Factual Allegations....................................................................4

        C.      The Claims..............................................................................5

III.    TERMS OF THE PROPOSED SETTLEMENT..................................................5

IV.     THE COURT SHOULD PROVISIONALLY CERTIFY THE CLASS FOR

        SETTLEMENT PURPOSES.......................................................................9

        A.      Plaintiffs Meet the Criteria of Rule 23(a)......................................10

        1.      Numerosity............................................................................10

        2.      Commonality..........................................................................11

                3.      Typicality..................................................................12

                4.      Adequacy..................................................................13

        B.      The Proposed Class Meets the Requirements of Rule 23(b)(3)......................13

                1.      Common Issues Predominate.............................................13

                2.      Resolution of These Issues by a Class Action is Superior to Other

                        Means of Resolution.......................................................14

        C.      Law Offices of Mary-Alice Coleman and Law Offices of Sohnen & Kelly

                Should Be Appointed Class Counsel...............................................15

V.      THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL...........16

VI.     THE PROPOSED NOTICE SATISFIES DUE PROCESS AND SHOULD BE

        APPROVED..........................................................................................20

VII.    CONCLUSION........................................................................................22

# TABLE OF AUTHORITIES

**Federal Court Cases**

*Alba v. Papa John's USA, Inc.*, 2007 WL 953849 ............................................................14

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ...................................10, 13

*Brinker Restaurant Corp. v. Sup. Ct.*, 53 Cal 4th 1004, 1033, 139 Cal.Rptr.3d 315, 273 P.3d 513 (2012) .............................................................................................................................14

*Brown v. WalMart Stores, Inc.*, 2012 WL 3672957 page 4 (N.D.Cal. 2012) ..............13, 14

*Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir. 1985) .........................................................20

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ..........................20

*Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 176 (1974) ...........................................20

*General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740, 752 (1982) .............................................................................................................10, 12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) .....................10, 13, 14, 15

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) .........10

*In re Mercury Interactive*, 618 F.3d 988, 995 (9th Cir. 2010) ..........................................22

*Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319-20 (9th Cir. 1982), *rev'd on other grounds*, 713 F.3d 503 (9th Cir. 1983) ...................................................................................................11

*Marshall v. Holiday Magic, Inc.*, 550 F. 2d 1173, 1178 (9th Cir. 1977) ...........................22

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) .................................18

*Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 493-94 (E.D. Cal. 2006) ........15

*Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) ................................................12

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993) ...................21, 22

*True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1062-63 (C.D. Cal. 2010) ............16

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d. 1227, 1234 (9th Cir. 1996) ...........................14

*Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 180 L.Ed.2d 374, 2011 U.S. LEXIS 4567 (2011) ................................................................................................................10, 11, 13

*West v. Circle K Stores, Inc.*, 2006 WL 1652598, at *1-2 (E.D. Cal. Jun. 13, 2006) ........16

*Zinser v. Accufix Research Inst. Inc. Corp.*, 253 F.3d. 1180, 1190 (9th Cir. 2001), amended by 273

F.3d 1266 (9th Cir. 2001) ............................................................................................15

**California Statutes and Authorities**

Business and Professions Code sections 17200, *et seq.*..........................................12

Business and Professions Code sections 17203 .......................................................12

California Constitution Article 14 § 4 ......................................................................4

**Federal Rules**

Federal Rule of Civil Procedure 23(a)(1) ...............................................................10

Federal Rule of Civil Procedure 23(a)(2) ...............................................................11

Federal Rule of Civil Procedure 23(a)(3) ...............................................................12

Federal Rule of Civil Procedure 23(a)(4) ...............................................................13

Federal Rule of Civil Procedure 23(b)(3) ...................................................13, 14, 15

Federal Rule of Civil Procedure 23(c)(2) ...............................................................20

Federal Rule of Civil Procedure 23(c)(2)(B) ...........................................20, 21, 22

Federal Rule of Civil Procedure 23(c)(3) ...............................................................21

Federal Rule of Civil Procedure 23(e)(1) ...............................................................20

Federal Rule of Civil Procedure 23(g) ...............................................................15, 16

**Federal Statutes**

29 U.S.C. section 216(b) ............................................................................................5

**Other Authorities**

7A Wright, et al., Fed. Prac. & Proc. Civ., § 1768 at 389-90 (3d ed. 2005-2011 Supp.) (3d ed. 2011) ..........................................................................................................13

4 Newberg on Class Actions § 11.24 (2012 Supp.) ................................................19

4 Newberg on Class Actions § 11.25-11.26 .......................................................16, 19

4 Newberg on Class Actions § 14.6 (and 2012 Supp.)............................................20

8 Newberg on Class Actions § 24:40 (4th Ed. and 2012 Supp.) ............................14

*Manual for Complex Litigation (Third)* § 30.41 (1995) ....................................16, 19

NOTICE IS HEREBY GIVEN that on July 21, 2014, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 12 of the above-entitled Court, Plaintiffs Andrea Sewell, Conrad Silva, and Edith Viera will and hereby do move the Court as follows:

1.      To provisionally certify a settlement class as follows:

All persons employed as a 'Payroll Auditor' or 'Senior Payroll Auditor' by Defendant and who regularly performed officially assigned duties outside of an assigned office at any time during the period on or after February 11, 2009 through date of entry of an Order of Preliminary Approval of this Settlement;

2.      To preliminarily approve the Memorandum of Understanding Regarding Class Action Settlement Agreement and Release (hereinafter "Settlement Agreement" or "Agreement") between Plaintiffs, on behalf of themselves and the Class (hereinafter "Plaintiffs") and Defendant;

3.      To set dates for the submission of opt-ins, objections, opt-outs, and challenges to dates of employment;

4.      To set dates for the fairness hearing regarding final approval of the Settlement Agreement, class representative enhancements, administration fees, and for Class Counsel's motion for an award of attorney's fees and costs, and;

5.      To approve the form and authorize the mailing of the Notice of Settlement and Estimated Payment Form and the Instructions to Challenge Dates of Employment.

This Motion is based on the Settlement Agreement, the Memorandum of Points and Authorities filed herewith and in support of this Motion, the Declaration of Harvey Sohnen in Support of Plaintiffs' Motion for Class Action Settlement, filed herewith ("Sohnen Dec.,") the Declaration of Michael Ahmad in Support of Plaintiffs' Motion for Class Action Settlement, filed herewith ("Ahmad Dec.,") the Declaration of Andrea Sewell in Support of Plaintiffs' Motion for Class Action Settlement, filed herewith ("Sewell Dec.,") the Declaration of Conrad Silva in Support of Plaintiffs' Motion for Class Action Settlement, filed herewith ("Silva Dec.,") the Declaration of Edith Viera in Support of Plaintiffs' Motion for Class Action Settlement, filed herewith ("Viera Dec.,") and all other papers filed in this action.

# I.   INTRODUCTION.

Plaintiffs Andrea Sewell, Conrad Silva and Edith Viera, individually, and on behalf of all others similarly situated, move this Court for an Order provisionally certifying the Class, preliminarily approving the parties' Settlement Agreement and approving the form and manner of Class Notice, and request that this Court schedule a fairness hearing for final approval of the settlement.  Plaintiffs' proposed form of Notice of Settlement and the Estimated Payment Form and Instructions to Challenge Dates of Employment are attached as Exhibits 2 and 3 to the Sohnen Dec.

The proposed settlement includes a total, non-reversionary payment of $1,175,000.00 (One Million One Hundred Seventy-Five Thousand Dollars.) This payment, less attorneys' fees, costs of suit and incentive payments to Class representatives, will result in a net amount of approximately $832,250 payable to the Class (referred to as the "Net Settlement Fund" or "NSF.")  The Net Settlement Fund will be distributed to the approximately 300 Class Members, with amounts of uncashed checks allocated amongst those who cashed their checks.  (Sohnen Dec., ¶ 18, 19.)[1]

Plaintiffs request that the Court set the following deadlines:

**Twenty days after entry of the Court's Preliminary Approval Order:** Defendant to provide the Settlement Administrator with information in electronic format regarding the Class Members, including last known addresses, and telephone numbers, Social Security Numbers and dates actively worked in California (*e.g.* was not on leave) in Class positions.

**Twenty days after receipt of settlement class information from Defendant:**  "Notice of Pendency of Class and Collective Action and Proposed Settlement" (the "Notice of Settlement") and "Claim Form/Estimated Payment Form and Instructions" ("Claim Form") to be mailed.  (Sohnen Dec., Exhs. 1 and 2 thereto.)

**Forty days after entry of the Court's Preliminary Approval Order:**  Motion for attorneys' fees and costs to be filed.

**Sixty days after the Class Notice is mailed:** Postmark deadlines for Class Member submission of opt-ins to the Fair Labor Standards ("FLSA") Settlement Class, opt-outs to the

---

[1] For the Unfair Competition Law claim, the Class size is 318 persons.  For the FLSA claim, the Class size is 304 persons.  (Sohnen Dec., ¶ 18.)

1    California Settlement Class, challenges to dates of employment or submission of written objections.

2    In further support of this Motion, Plaintiffs provide the following Memorandum.

3    **II.      ALLEGATIONS AND PROCEDURAL BACKGROUND.**

4    **A.      Procedural History.**

5    On February 11, 2013, Plaintiffs Andrea Sewell, Conrad Silva, and Edith Viera, filed this

6    lawsuit on behalf of themselves and all similarly situated persons who, on or after February 11,

7    2009, have been, are, or in the future will be employed in California by Defendant in positions of

8    workers' compensation payroll auditor or senior workers' compensation payroll auditor

9    ("Auditors.")  The gravamen of the Complaint was that Defendant had failed to provide overtime

10   compensation and minimum wages to its Auditors.  Plaintiffs Sewell, Silva, and Viera sought class-

11   wide damages and restitution for pay allegedly due under the FLSA and/or California's Unfair

12   Compensation laws, liquidated damages, interest thereon, injunctive relief, and costs and attorneys'

13   fees.  On April 4, 2013, Plaintiffs each filed with this court FLSA Consent Forms as required by 29

14   U.S.C. sections 216(b) and 256.[2]

15   A First Amended Complaint was filed on April 3, 2013.  The First Amended Complaint

16   stated claims for alleged failure to provide overtime compensation under the FLSA and related

17   claims for Unfair Competition Law violations, but did not include any claims for minimum wage

18   violations.

19   Plaintiffs' Counsel engaged in extensive discovery, including Initial Disclosures by both

20   sides, interrogatories to Defendant and responses to discovery requests to Plaintiffs, production of

21   documents by Defendant (including records of weeks worked by Auditors and Plaintiffs), and the

22   deposition of Plaintiff Sewell.  All discovery has been reviewed and analyzed.  In addition,

23   Plaintiffs' Counsel has interviewed approximately 122 prospective Class Members.  (Sohnen Dec., ¶

24   10.)

25

26

27   _____

     [2] Following the initiation of this lawsuit and prior to November 27, 2012, forty-six (46) Settlement
28   Class Members, including the three named Plaintiffs, have filed their consent forms opting into this
     Action. (Sohnen Dec., Exh. 1 thereto, ¶ 48.)

1    The parties participated in a full day of arms-length negotiations, assisted by mediator Mark

2    Rudy, an experienced employment law mediator, on September 9, 2013.  Plaintiffs Andrea Sewell

3    and Conrad Silva personally attended the mediation.  (Sewell Dec., ¶ 9(E); Silva Dec., ¶ 9(E).)

4    Following this day of mediation, the parties continued to engage in settlement discussions.  In early

5    December 2013, the parties agreed to the principle settlement terms.

6             **B.    Factual Allegations.**

7    All three named Plaintiffs were employed by Defendant State Compensation Insurance Fund

8    ("State Fund") as workers' compensation payroll auditors.  Plaintiff Sewell was employed by

9    Defendant from 2001 to December 30, 2011.  Plaintiff Silva was employed by Defendant from 2005

10   to December 30, 2011.  Plaintiff Viera was employed by Defendant from 2003 to December 30,

11   2011.  Each worked for Defendant in Sonoma County.

12   State Fund is an entity established by the California Legislature under its "plenary power,

13   unlimited by any provision of this Constitution, to create, and enforce a complete system of workers'

14   compensation, by appropriate legislation. . . ."  (Cal. Const. Art. 14 § 4.)  It has a principal place of

15   business in San Francisco, California, but operates offices throughout the State.  (First Amended

16   Complaint ("FAC") ¶ 14.)

17   Between February 2009 until approximately mid-2012, both payroll auditors and senior

18   payroll auditors worked in the field, conducting many of their audits at policyholders' places of

19   business.  Subsequently, only senior payroll auditors performed audits in the field.  Their duties

20   included:  auditing payroll records of current and previously insured policyholders, scheduling and

21   conducting audits to verify and determine correct payroll and employment classifications in

22   accordance with the Workers' Compensation Insurance Rating Bureau ("WCIRB") Manual rules and

23   regulations and State Fund guidelines and procedures, assisting policyholders in the preparation of

24   payroll reports and records, completing and submitting audit reports, maintaining records of

25   completed audits, maintaining quality of accepted audits from district office auditors, resolving audit

26

27

28

disputes, and reviewing and determining premium charges for policyholders based on payroll audits.[3]

Plaintiffs contend that at all relevant times, Defendant had common policies and/or practices of willfully failing and refusing to pay the Class Members anything at all for substantial amounts of overtime work, in whole or in part as a result of working off-the-clock and as a result of Defendant's time shaving, i.e. cutting time from the recorded work time. Plaintiffs further contend that Defendant, by a policy and practice applicable to the Class, required the use by Class Members of weekly activity logs, and instructed Class Members not to write down more than 40 hours on their activity logs, and make sure activity logs added up to no more than 40 hours for a full work week, regardless of the actual hours worked.  Defendant denies these allegations.

### C.   The Claims.

There are two claims for relief in the First Amended Complaint, the operative pleading. These claims are for violations of the Fair Labor Standards Act ("FLSA"), as a collective action pursuant to FLSA section 216(b), 29 U.S.C. section 216(b), and violations of the California Unfair Competition Law, Business and Professions Code sections 17200, *et seq.* based solely on the alleged violations of the FLSA.  The gist of the allegations is that State Fund failed to provide its Auditors with legally mandated overtime compensation.  Defendant has denied these allegations.

### III.   TERMS OF THE PROPOSED SETTLEMENT.

The terms of the proposed settlement are set forth in the Settlement Agreement fully executed by the parties and counsel in April 2014.  (Sohnen Dec., Exh. 1 thereto.)  In short, the Settlement Agreement provides for a cash payment of $1,175,000.00, which is the maximum amount State Fund is required to pay, inclusive of the employer's share of standard payroll tax requirements, the employee's share of payroll tax requirements, Plaintiffs' Counsel's attorneys' fees and costs, the amount of the settlement administration expenses, and the amount of the Class representative service awards.  This payment is in return for a release that extinguishes the claims that were alleged in the

---

[3] Senior Workers' Compensation Payroll Auditors and Workers' Compensation Payroll Auditors basically performed the same duties, with Senior Auditors performing the more complex or sensitive audits.

First Amended Complaint in this Action, whether known or unknown, as well as similar claims that arise from the same factual predicate of the Action, Complaint or First Amended Complaint, whether known or unknown, that exist from February 11, 2009 through the date of entry of the Order of Final Approval by the Court. **This is a non-reversionary settlement.** The following summarizes the principle terms of the settlement.

### The Settlement Class

The claim under the FLSA requires an opt-in (or filing of a Consent Form), and the California Unfair Competition claim does not. Under the Settlement Agreement, the Settlement Class is defined as any person who is a member of the California and/or FLSA Settlement Classes. The California Class is defined as "all persons employed as a 'Payroll Auditor' or 'Senior Payroll Auditor' by Defendant and who regularly performed officially assigned duties outside of an assigned office at any time during the period on or after February 11, 2009 through date of entry of an Order of Preliminary Approval of this Settlement (the "California Settlement Period.") The FLSA Class is defined as and consists of "all persons employed as a 'Payroll Auditor' or 'Senior Payroll Auditor' by Defendant and who regularly performed officially assigned duties outside of an assigned office at any time at any time during the period on or after April 4, 2010 through date of entry of an Order of Preliminary Approval of this Settlement (the "FLSA Settlement Period.") (Sohnen Dec., Exh. 1 thereto, ¶¶ 54-55.)[4]

### The Distribution Formula

The Settlement distribution formula is fair in that it is based on months worked, with the assumption that the more months worked, the greater the Class Member's individual overtime claim. The settlement envisions a three-step process. Under the first step, Class Members will be mailed a Notice of Settlement and Claim Form. These documents will provide Class Members with information as to the number of compensable months that Defendant's records indicate the individual worked in Class Positions during the Class Period and estimate each Settlement Class Member's share of the Net Settlement Fund. The Claim Form also includes instruction to challenge

---

[4] Because the California Class has the longer statute of limitations, the Class sought to be certified is defined in accordance with the dates of the California Class.

the stated dates of employment.  Both the Notice of Settlement and the Claim Form contain instructions that in order for a Class Member to receive any amount for release of his or her FLSA claims, the Class Member must submit the enclosed Claim Form and check Box #1, indicating he or she is consenting to join the FLSA Class.[5]  Employees also are notified of their opportunity to opt-out or object to the settlement.

Second, the initial round of settlement checks will be mailed to any Class Member who does not validly opt out of the California Settlement Class and/or has filed a FLSA claim.  (Sohnen Dec., Exh. 1 thereto, ¶ 71.)  Employees will have ninety days to cash their settlement checks from the first mailing, after which the checks are void.  A second round of checks will be mailed, based upon a pro-rata formula, to those who timely cashed their checks from the first mailing.   (Sohnen Dec., Exh. 1 thereto, ¶¶ 79-80.)  Any undisbursed funds after this sequence of payments will be contributed to a *cy pres* beneficiary, and will not revert to Defendant.

More specifically, the Settlement Administrator shall compute preliminary estimates of each Settlement Class Member's distribution as follows.  A Settlement Class Member's share will be based on whether he or she participates in both the California Class settlement and the FLSA Class.  A portion of the Net Settlement Fund will be allocated to the FLSA Class in the amount of $30.00 multiplied by the total number of work months worked by the FLSA Class during the FLSA Class Period (hereafter referenced as the "FLSA Class Award.")  The remaining portion of the Net Settlement Fund will be disbursed to the California Settlement Class (the "California Class Award.")

With respect to the FLSA Settlement Class, those who submit Claim Forms or who previously filed a Consent Form will be sent a check for $30.00 multiplied by the total number of work-months they individually worked.  (Sohnen Dec., Exh. 1 thereto, ¶60.d.i.)[6]

With respect to the California Class, each will receive an award on a pro rata basis based on the total number of work months worked by each California Class Member.  More specifically, to

---

[5] The forty-six Class Members who already filed a FLSA Consent Form in this Action are not required to submit a Claim Form in order to be included in the FLSA Settlement Class.
[6] If there is a portion of the total FLSA Class Award that goes undistributed, based on FLSA Class Members who do not opt-in to the FLSA Settlement Class, the remaining portion of the FLSA Class Award will revert to the California Class Settlement and will be distributed.  (Sohnen Dec., Exh. 1 thereto, ¶ 60.d.iii-v.)

calculate the actual Final California Class Award for each member of the California Settlement Class, the Settlement Administrator will determine the number of members of the California Settlement Class (i.e. all California Class Members who have not timely opted-out), then calculate the number of work-months, on a pro rata basis, of all members of the California Settlement Class, and distribute the California Class Award, on a pro rata basis, to each member of the California Settlement Class based on the number of work-months each California Class Member worked.[7] (Sohnen Dec., Exh 1 thereto, ¶ 60.d.v.)

Following an initial mailing, the amounts of checks not negotiated by the deadline will be distributed by a second mailing. This distribution shall also be based upon a pro rata share of sums of checks which were not cashed in a timely manner from the first mailing.  (Sohnen Dec., Exh. 1 thereto, ¶ 77.)  Any unclaimed funds shall be distributed to Legal Services of Northern California as *cy pres* beneficiary, subject to Court approval.  (Sohnen Dec., Exh. 1 thereto, ¶ 60.h.)

**Released Claims**

The California Settlement Class Members will release State law claims, meaning any and all applicable state and local law claims, obligations, demands, actions, rights, causes of action, and liabilities against State Fund, its agents, insurers, attorneys, successors and assigns, of whatever kind and nature, character and description, that were alleged in the First Amended Complaint of this Action, whether known or unknown, as well as similar claims that arise from the same factual predicate of the Action, Complaint or First Amended Complaint, whether known or unknown, that exist from February 11, 2009 through the date of entry of the Order of Final Approval by the Court. (Sohnen Dec., Exh. 1 thereto, ¶ 31)

The FLSA Settlement Class Members will release any and all federal law claims, obligations, demands, actions, rights, causes of action, and liabilities against State Fund, its agents, insurers, attorneys, successors and assigns, of whatever kind and nature, character and description, that were alleged in the First Amended Complaint of this Action, whether known or unknown, as well as

---

[7]  There will be a minimum payment to any Settlement Class Member, whether a member of the FLSA Settlement Class, the California Settlement Class, or both, of $50.00.  (Sohnen Dec., Exh. 1 thereto, ¶ 60.d.v.i.)

similar claims that arise from the same factual predicate of the Action, Complaint or First Amended Complaint, whether known or unknown, that exist from February 11, 2009 through the date of entry of the Order of Final Approval by the Court.  (Sohnen Dec., Exh. 1 thereto, ¶ 32.)

Plaintiffs Sewell, Silva, and Viera and Defendant also will provide a mutual general release of all known and unknown claims.  (Sohnen Dec., Exh. 1 thereto, ¶¶ 52, 97-100.)

### Attorney's Fees and Costs

All attorney's fees and costs approved by the Court will be paid out of the Settlement Amount.  Class Counsel will seek by separate application attorney's fees of up to twenty-five percent (25%) of the Gross Fund (two hundred ninety-three, seven hundred and fifty thousand dollars ($293,750)) to resolve Plaintiffs' Counsels' claims for attorneys' fees, and costs not to exceed $15,000.  (Sohnen Dec., Exh. 1 thereto, ¶ 60.e.)  The lodestar fee amounts of Class Counsel collectively are expected to exceed $293,750, with counsel performing more work in connection with settlement administration and final approval.  It is anticipated that no multiplier will be requested.

### Service Awards to Class Representatives

Class Representative Service Awards of seven thousand, five hundred dollars ($7,500) each to Andrea Sewell and Conrad Silva, and five thousand dollars ($5,000) to Edith Viera in exchange for general releases from each, for a total of $20,000, are sought, which shall be paid out of the Settlement Fund.  (Sohnen Dec., Exh. 1 thereto, ¶ 60.g.)

### Notice to the Settlement Class

The parties have agreed to a Settlement Administrator (Simpluris, Inc.) who will be responsible for giving notice to the Class in the form to be approved by this Court.  (Sohnen Dec., Exh. 1 thereto, ¶ 61.)  Plaintiffs request that the Court approve the form of Notice of Settlement and the Claim Form appended as Exhibits 2 and 3 to the Sohnen Declaration.  The costs for notice and settlement administration will be deducted from the Settlement Fund, and are estimated at $14,000.

### IV.   THE COURT SHOULD PROVISIONALLY CERTIFY THE CLASS FOR SETTLEMENT PURPOSES.

Plaintiffs respectfully request that the Court make appropriate findings and provisionally

certify the following Class, for purposes of settlement only[8]:

All persons employed as a 'Payroll Auditor' or 'Senior Payroll Auditor' by Defendant and who regularly performed officially assigned duties outside of an assigned office at any time during the period on or after February 11, 2009 through date of entry of an Order of Preliminary Approval of this Settlement (the "California Settlement Period");

As described in detail below, the proposed Class meets all four prerequisites of Rule 23(a) necessary to class certification.  Rule 23(b)(3) also is satisfied, making the Class appropriate for certification.[9]

### A.       Plaintiffs Meet the Criteria of Rule 23(a).

A party seeking class certification must affirmatively demonstrate compliance with Rule 23. Certification is proper only if "the trial court is satisfied, after rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."  *Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 180 L.Ed.2d 374, 2011 U.S. LEXIS 4567 (2011); *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740, 752 (1982).

Under Rule 23(a), the party seeking certification must demonstrate, first, that:

"(1) the class is so numerous that joinder of all members is impracticable,

"(2) there are questions of law or fact common to the class,

"(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

"(4) the representative parties will fairly and adequately protect the interests of the class" (paragraph breaks added). *Wal-Mart concurrence*, 180 L.Ed.2d at 401, footnote 2; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998.)

### 1.       Numerosity.

To warrant certification under Rule 23(a)(1), a proposed class must be so numerous that joinder of all class members is impracticable. Fed. R. Civ. P. 23(a)(1).  Plaintiffs need not show that

---

[8] Defendant does not oppose provisional certification.  (Sohnen Dec., Exh. 1 thereto, ¶58.)
[9] Under *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997), a court faced with a request for a settlement–only class like this one need not inquire whether the case would present intractable problems of trial management, but the other requirements under Rule 23 must still be satisfied.

the number of class members is so large that it would be impossible to join every class member, only that joinder is impracticable.  (*Harris v. Palm Springs Alpine Estates, Inc*., 329 F.2d 909, 913-14 (9th Cir. 1964).)  The Ninth Circuit has indicated that as few as 39 class members may be sufficient to satisfy the numerosity requirement.  *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319-20 (9th Cir. 1982), *rev'd on other grounds*, 713 F.2d 503 (9th Cir. 1983).  Here, the Class satisfies the numerosity requirement.  For the unfair competition claim, the Class size was 318 persons and 12,467 workmonths through April 18, 2014. For the FLSA claim, which pertains to a subgroup of those involved in the unfair competition claim, the corresponding class size and workweeks were 304 and 8,447.  (Sohnen Dec. ¶ 18).  Many of these individuals are no longer employed by Defendant.  It would be impracticable to join all of them.

## 2.    Commonality.

Under Rule 23(a)(2), Plaintiffs must show that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  This requirement is met through the existence of a "common contention" that is of "such a nature that it is capable of classwide resolution."  (*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374, 389 (2011).)  The presence of merely one common issue of law or fact is sufficient.  *Id*. at 395.

Here, Plaintiffs contend that State Fund has a common practice of not providing overtime compensation to Auditors.  Plaintiffs further contend that the following common issues as to the First Amended Complaint satisfy Rule 23(a)(2):

a.    What were Defendant's policies and/or practices for paying overtime for overtime work?

b.    What were Defendant's policies and/or practices for determining the regular rate of pay for purposes of calculation of overtime rates?

c.    Did Defendant have and implement a policy and/or practice whereby Defendant failed to pay its Auditors for overtime work at the legally required overtime rate, namely time and a half their regular rates?

d.    Do Defendant's policies and/or practices with regard to overtime wages violate the FLSA?

e.       Do Defendant's policies and/or practices with regard to overtime wages constitute or result in unfair business practices by Defendant within the meaning of the California Unfair Competition Law, California Busn. & Prof. Code sections 17200, *et seq*?

f.       What were Defendant's policies and/or practices for keeping track of, and keeping records of, the amount of time worked by the Class Members?

g.       Did Defendant have and implement a policy and/or practice whereby Defendant required the Class Members to work off-the-clock, i.e. while their work time was not being recorded?

h.       Did Defendant have and implement a policy and/or practice whereby Defendant did not record all time worked by the Class Members?

i.       Did Defendant have and implement a policy and/or practice whereby Defendant shaved time, i.e. altered the records of the time worked by the Class Members so as to reduce their work time?

j.       Do Defendant's policies and/or practices with regard to records of the time worked by the Class Members and paying for time worked constitute or result in unfair business practices by Defendant within the meaning of the California Unfair Competition Law, California Busn. & Prof. Code sections 17200, *et seq*?

k.       Is Defendant liable to the Class Members for restitution and/or injunctive relief under the California Unfair Competition Law, California Busn. & Prof. Code section 17203?

### 3.       Typicality.

Under Rule 23(a)(3), Plaintiffs' claims must be "typical" of those of the Class.  The typicality analysis focuses on similarities between the legal theories of the proposed class representatives and the legal theories of the class members who they seek to represent. (*See, e.g., Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).)  Because both commonality and typicality focus on the similarity of the claims, the two requirements "tend to merge."  (*Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n. 13 (1982).)  Here, Plaintiffs maintain that their claims satisfy the typicality requirement because their claims are substantially identical to the claims of absent Class Members – the claims rise and fall under the same factual circumstances and legal theories.

1

### 4.    Adequacy.

2        The proposed Class Representatives have "fairly and adequately protect[ed] the interests of

3   the class" and will continue to do so.  Fed. R. Civ. P. 23(a)(4).  The adequacy requirement has two

4   prongs: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class

5   members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on

6   behalf of the class?"  (*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).)  The law

7   governing adequacy of representatives is well settled:  "[O]nly a conflict that goes to the very subject

8   matter of the litigation will defeat a party's claim of representative status."   7A Wright, et al., Fed.

9   Prac. & Proc. Civ., § 1768 at 389-90 (3d ed. 2005-2011 Supp.) (3d ed. 2011).

10       Plaintiffs' interests are aligned with, not antagonistic to, the interests of the proposed Class.

11  Each member of the proposed Class, just like the Plaintiffs, has an interest in recovering damages for

12  violations of the FLSA and/or California Unfair Competition laws for failure to provide overtime

13  compensation based upon the same alleged wrongs.  Plaintiffs have shown their ability and

14  willingness to prosecute this action vigorously on behalf of the Class in the litigation to date and

15  hired counsel experienced in complex wage and hour class action litigation.  (Sohnen Dec., ¶¶ 21-24

16  and Exhs. 4 and 5 thereto; Ahmad Dec., ¶¶ 4-14 and Exh. 1 thereto; Sewell Dec., Silva Dec., and

17  Viera Dec.)  Accordingly, Plaintiffs should be appointed Class Representatives under Rule 23(a)(4).

18       **B.    The Proposed Class Meets the Requirements of Rule 23(b)(3).**

19       Rule 23(b)(3) focuses on the relationship between common and individual issues.  To grant

20  certification, the Court must find that questions of law or fact common to the Class Members

21  predominate over questions affecting only individual members and that a class action is superior to

22  other available methods for fairly and efficiently adjudicating the controversy.  Fed. Rule Civ. P.

23  23(b)(3); *Wal-Mart Stores, Inc.*, concurrence 180 L.Ed.2d at 374; *Brown v. Wal-Mart Stores, Inc.*

24  2012 WL 3672957, ftnt. 2.

25       **1.    Common Issues Predominate.**

26       The Rule 23(b)(3) predominance inquiry is meant to "tes[t] whether proposed classes are

27  sufficiently cohesive to warrant adjudication by representation.*"  (Wal-Mart Stores, Inc.,*

28  concurrence 180 L.Ed.2d at 406, citing *Amchem Products, Inc. v. Windsor*, 52 U.S. 591, 623, 117

S.Ct. 2231, 138 L.Ed.2d 689 (1997).) "As the American Law Institute has characterized 'predominance,' the test is meant to ensure that the aggregation will 'materially advance the resolution of multiple claims.'" (2 Newberg on Class Actions, §4.49, p. 195, (5th Ed. 2012).) Implicit in these articulations of satisfaction of the predominance test is the notion that adjudication of the common issues of the suit has important and desirable advantages of judicial economy compared to all other issues, or when viewed by themselves.  2 Newberg, §4.49, p. 194, fn. 3 (5th Ed. 2012), citing *Valentino v. Carter-Wallace, Inc.*, 97 F.3d. 1227, 1234 (9th Cir. 1996.)

"When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than individual basis." (*Alba v. Papa John's USA, Inc.*, 2007 WL 953849, at *10, quoting *Hanlon*, 150 F.3d at 1022.)  The predominance requirement is "not a numerical test that identifies every issue in the suit as suitable for either a common or individual treatment and determines whether common questions predominate by explaining the resulting balance in the scale [citations omitted.]  A single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions."  2 Newberg, §4.51, p. 200 (5th Ed. 2012.)

Here Plaintiffs allege that there are common issues of fact and law, as identified above, and these predominate. "Claims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment." (*Brown v. WalMart Stores, Inc.*, 2012 WL 3672957 page 4 (N.D.Cal. 2012) citing *Brinker Restaurant Corp. v. Sup. Ct.*, 53 Cal 4th 1004, 1033, 139 Cal.Rptr.3d 315, 273 P.3d 513 (2012); 8 Newberg on Class Actions §24:40 p. 222 (4th Ed. and 2012 Supp.))  The questions raised here are both numerically and qualitatively substantial in relation to the issues peculiar to individual class members.

## 2. Resolution of these issues by a class action is superior to other means of resolution.

Rule 23(b)(3) also requires that class resolutions must be "superior to other available methods for fair and efficient adjudication of the controversy."  The superiority inquiry under

Rule(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved with the particular case. (*Hanlon*, 150 F.3d at 1023.)  In considering whether a class action is superior, the court must focus on whether the interests of "efficiency and economy" would be advanced by class treatment. (*Zinser v. Accufix Research Inst. Inc. Corp*., 253 F.3d. 1180, 1190 (9th Cir. 2001), amended by 273 F.3d 1266 (9th Cir. 2001) (internal quotations omitted.))  Rule 23(b)(3) provides a non-exhaustive list of factors to consider:

> (A)    the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;

> (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

> (D)    the likely difficulties in managing a class action.

Here, Plaintiffs maintain that concentrating the adjudication of claims into a single proceeding is highly desirable.  The alternative is individual claims for a small amount of money to be brought by individuals who most likely could not afford to pursue them.  These claims would not only unnecessarily burden the judiciary, but would prove uneconomical for the plaintiffs' resolution.[10]  See *Zinser v. Accufix Research Institute, Inc.,* 253 F.3d 1180, 1190-1191 (9th Cir. 2001), amended by 273 F.3d 1266 (9th Cir. 2001.)  ("Where damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action.")

### C.    Law Offices of Mary-Alice Coleman and Law Offices of Sohnen & Kelly Should Be Appointed Class Counsel.

Rule 23(g) requires that courts consider four factors when appointing Class Counsel: whether counsel (1) has investigated the claims, (2) is experienced in handling class actions and complex litigation, (3) is knowledgeable regarding the applicable law, and (4) will commit adequate resources to representing the class.  Fed. R. Civ. P. 23(g); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D.

---

[10] There are no other known lawsuits against this Defendant for similar claims.  (Sohnen Dec., ¶ 27)

1  474, 493-94 (E.D. Cal. 2006).

2      Law Offices of Mary-Alice Coleman and Law Offices of Sohnen & Kelly meet the standards

3  of Rule 23(g) because, as stated in the declarations of counsel filed herewith, they have extensive

4  experience litigating wage and hour class actions and are knowledgeable regarding the applicable

5  law.  (Sohnen Dec., ¶¶ 21-24 and Exhs. 4 and 5 thereto; Ahmad Dec., ¶¶ 4-14 and Exh. 1 thereto.)

6  Law Offices of Mary-Alice Coleman and Law Offices of Sohnen & Kelly have conducted

7  significant pre-litigation and pre-settlement investigation here, and have demonstrated ability to

8  represent classes in complex litigation and to handle issues associated with representing employees

9  in wage and hour litigation.

10     **V.    THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL.**

11     Preliminary approval is an initial assessment of the fairness of the proposed settlement by the

12  Court, on the basis of written submissions and informal presentations from settling parties.  The

13  *Manual for Complex Litigation* summarizes the preliminary approval criteria as follows.

14     If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt

15  its fairness or other obvious deficiencies, such as unduly preferential treatment of class

16  representatives or of segments of the class, or excessive compensation for attorneys, and appears to

17  fall within the range of possible approval, the court should direct that notice under Rule 23(e) be

18  given to the class members of a formal fairness hearing, at which arguments and evidence may be

19  presented in support of and in opposition to the settlement.  4 Newberg on Class Actions § 11.25-

20  11.26, citing *Manual for Complex Litigation (Third)* § 30.41 (1995) ("*Manual for Complex*

21  *Litigation*"), p. 237.

22     The purpose of the preliminary approval process is to determine whether the proposed

23  settlement is within the range of possible judicial approval and thus whether notice to the class of the

24  terms and conditions and the scheduling of a formal fairness hearing is worthwhile.  4 Newberg on

25  Class Actions §11.25 (4th ed. 2002) (2012 Supp.); *West v. Circle K Stores, Inc*., 2006 WL 1652598,

26  at *1-2 (E.D. Cal. Jun. 13, 2006); *True v. Am. Honda Motor Co*., 749 F. Supp. 2d 1052, 1062-63

27  (C.D. Cal. 2010).

28     Here, the proposed settlement satisfies preliminary approval requirements.  Class Counsel

1   believes that the proposed settlement is fair and reasonable, reached after over a year of extensive

2   investigation and discovery, a day of mediation and subsequent settlement discussions.  (Sohnen

3   Dec. ¶¶ 12-13.)  The Settlement will provide the Class with a substantial recovery, which will inure

4   to the benefit of its participants and beneficiaries, the Class Members. If the court grants the

5   requested applications for attorney's fees, costs and class representative service awards, the amount

6   for distribution to the Class will be approximately $832,250.  This equates to approximately $66.76

7   per workmonth for the 12467 workmonths between February 11, 2009 and April 18, 2014, and

8   somewhat less per workmonth when the monthly amount is computed for the larger number of

9   workmonths for the period between February 11, 2009 and the date of final approval of the

10  settlement.  Assuming 100% participation in the settlement, this equates to an average payment of a

11  portion of an hour of overtime pay for each workweek for each Class Member.  (Sohnen Dec.,

12  ¶19.)[11]

13         There are numerous risks associated with not settling, and many obstacles to a Class recovery

14  of the maximum exposure amount.  For example, as there were no records of hours Class Members

15  worked in excess of forty per week, the basis for establishing any damages could well turn on the

16  recollection and estimates by the Class Members themselves, with the attendant difficulties of

17  remembering and reconstructing time estimates. This is because there were serious arguments that

18  using the available electronic records, such as times of phone calls and logging in and out of

19  computers, would not generate reliable estimates given individual differences between employees in

20  how and when they used the computers and phone during their daily work, and whether there was

21  continuous work in the interval between first and last entry.  Additionally, there was no standard

22  amount of overtime that employees claimed to have worked, or could objectively be shown to have

23  worked, with significant variations among those claiming overtime pay, and with some who felt

24  uncomfortable making an estimate based without contemporaneous records.

25         Since there was no ready formula for establishing the amount of damages on a classwide

26  basis, proof of damages might involve participation by the individual employees to testify as to their

27

28  _____

[11] For example for the named Plaintiffs, whose overtime rate would be $37.16 per hour, the average payment would be slightly under a half hour of overtime pay per week.  (Sohnen Dec., ¶19.)

1   own estimates of damages.  During the first year in the case, even with considerable efforts to

2   contact Class Members, only 46, or about 15%, came forward to elect to opt-in.  Where the proof of

3   damage claims entails individual Class Member participation, there is a risk of low damages when

4   the Class Members do not participate. Additionally, for those who would testify without any

5   contemporaneous records to assist them in estimating damages, there is a risk that the estimates

6   would be found to be arbitrary rather than reasonable.  (Sohnen Dec., Exh. 1 thereto, ¶ 19.b.)

7       Additionally, there was no express written policy that employees work off-the-clock, and

8   there is a corresponding risk that class certification will be denied, or if granted initially, that there

9   will be subsequent decertification, based on a court determination that common issues of fact and

10  law concerning the employer's policies and practices did not predominate.  There is a risk of a

11  finding that rather than one set of practices and policies statewide, there were variations.  (Sohnen

12  Dec., Exh. 1 thereto, ¶ 19.c.)

13      Furthermore, for the FLSA claim itself, the statute of limitations for any individual is two

14  years before the individual Class Member files his or her opt-in. This settlement provides some

15  remedy for a much longer period than the FLSA statute, for four years prior to the filing of the initial

16  lawsuit on February 11, 2013, based on the claim for violation of the Unfair Competition Law.  Thus

17  the settlement has a feature that allows for a recovery for a longer period than the FLSA claim alone.

18  (Sohnen Dec., Exh. 1 thereto, ¶ 19.d.)

19      There also is a risk that there will be no finding of willfulness benefiting the Class. The

20  FLSA statute of limitations is extended to three years from two, in the event of a finding of a willful

21  violation. Given the lack of an express policy and issues as to whether or not the challenged

22  practices were statewide or not, there is a risk that there will be no finding of willfulness, so if there

23  would be any recovery on the FLSA claim, it would only be for opt-ins and for two years before the

24  date of opt-ins, rather than for the longer period going back to February 11, 2009, as provided in the

25  Settlement Agreement. (Sohnen Dec., Exh. 1 thereto, ¶ 19.e.)

26      Finally, for both the FLSA and Unfair Competition Law claims, there is a risk that the Class

27  will lose on the merits, either in whole or part, e.g. by virtue of a finding that overtime pay was not

28  due, either some or all of the time, even if overtime hours were worked, because Defendant allegedly

did not have sufficient notice or reason to believe that Class Members were working off the clock. (Sohnen Dec., Exh. 1 thereto, ¶ 19.f.)

Another consideration in evaluating preliminary approval is that the Settlement does not provide for "unduly preferential treatment of class representatives, or of segments of the class." (4 Newberg § 11.25-11.26, citing *Manual for Complex Litigation* § 30.41, p. 237.)  All Class Members' shares, including those of the Class representatives, will be calculated based on their proportionate share of the Net Settlement Fund based on months worked.  Class Counsel intends to seek an incentive payment award to the Class representatives of seven thousand, five hundred dollars ($7,500) each to Andrea Sewell and Conrad Silva, and five thousand dollars ($5,000) to Edith Viera, in recognition of their service to the Class.  (Sewell Dec., ¶ 13; Silva Dec. ¶ 13; Viera Dec., ¶ 13.) The Ninth Circuit has recognized that "[i]ncentive awards are fairly typical in class action cases." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009.)  "Such awards are discretionary, … , and are intended to compensate class representatives for work done on behalf of the class, [and] to make up for financial or reputational risk undertaken in bringing the action and, sometimes, to recognize their willingness to act as a private attorney general." *Id* at 958-959.  The request for incentive awards of $20,000 total to the Class representatives in this case will be included in the Class Notice mailed to the Class, so that the Court may consider any objections to the incentive awards.  (Sohnen Dec., Exh. 2, p. 1, ¶ B.1.)  The settlement may be approved even if the Court reduces or eliminates the incentive awards.

Finally, the Settlement does not provide for "excessive compensation for attorneys." (4 Newberg § 11.24 p. 38 (2012 Supp.), citing *Manual for Complex Litigation*, § 30.41, p. 237.)  The Settlement Agreement provides that Class Counsel will seek court-awarded fees and reimbursement of costs.  (Sohnen Dec., Exh. 1 thereto, ¶75(h); Exh. 2 thereto, ¶II.B.)  Class Counsel intends to seek an award of fees of up to twenty-five percent (25%) of the Gross Fund (two hundred ninety-three, seven hundred and fifty thousand dollars ($293,750), plus costs not to exceed $15,000.  This amount is anticipated to be less than Class Counsel's combined lodestar at the time of filing their fee request, and Counsel expect to perform more work in the future prior to final approval.  "[A] Federal Judicial Center study released in 1996 found that in the four districts studied, most fee awards in common

fund class actions were between 20% and 40% of the gross monetary settlement." (4 Newberg on Class Actions § 14.6, p. 558 (and 2012 Supp.).)  Circumstances to be considered include the result obtained for the class, the risk involved in litigating on a contingent fee basis, and the complexity of the legal and factual issues.  (*Id.; see also* 4 Newberg on Class Actions § 14.6 ("The Common Fund Doctrine").)  As Plaintiffs will demonstrate in their fee motion, these factors support a 25 percent award in this case.  As described above, Class Counsel has vigorously prosecuted the Class claims and have achieved an excellent result.  Likewise, the costs to be requested were reasonably expended in the litigation.  Also to be considered is that the risks here were higher perhaps than in other cases in that there was no express written policy and individuals would have to prove damages.  Again, the settlement may be approved even if the Court reduces the fee award.

Here, the Settlement payment of $1,175,000.00 is well within the range of potential recoveries for the Class in this case and, given the risks presented by the litigation, including the risk of outright loss on either class certification, liability, or damages, is fundamentally fair to the Class.

For all of these reasons, the proposed Settlement falls within the range of reasonableness, and should be submitted to Class Members.

## VI.   THE PROPOSED NOTICE SATISFIES DUE PROCESS AND SHOULD BE APPROVED.

Under Rule 23(e), the court "must direct notice in a reasonable manner to all class members who would be bound by the propos[ed settlement]." (Fed. R. Civ. P. 23(e)(1).)  Class Members are entitled to receive "the best notice practicable under the circumstances." (F.R.C.P Rule 23(c)(2)(B); See *Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir. 1985) (quoting Fed. R. Civ. P. 23(c)(2)).)  "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" (*See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).)  In addition, notice mailed to each member of a settlement class "who can be identified through reasonable effort" constitutes reasonable notice. *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 176 (1974) (finding that the parties' notice plan met the "best practicable notice" standard where it provided that defendant would provide names and addresses for all potential class members from its internal records, and the settlement administrator

20

would take reasonable steps to ensure the addresses were current and then mail a copy of the proposed notice to each class member).

Plaintiffs' proposed Notice of Settlement satisfies this standard.  Plaintiffs propose to use individualized notice by first class mail to send the Notice of Settlement and Claim Form.  (Sohnen Dec., Exh. 1 thereto, ¶ 64.)  Names, mailing addresses, phone numbers and social security numbers will be provided from Defendant's employment records.  (Sohnen Dec., Exh. 1 thereto, ¶ 65.)  The settlement administrator will take reasonable steps to locate Class Members whose notices are returned undeliverable, and will re-mail such notices.  (Sohnen Dec., Exh. 1 thereto, ¶ 68.)

Plaintiffs' proposed Notice of Settlement describes the nature of the action, the definition of the Class certified, the Class claims, and the binding effect of a class judgment on members under Rule 23(c)(3).  (*See* F.R.C.P Rule 34(c)(2)(B).) It also describes the terms of the Settlement, sets forth the procedure for opting-in to the FLSA Settlement Class, challenging dates of employment, objecting, and opting-out of the California Settlement Class, provides specifics on the date, time, and place for the final settlement approval hearing, enables Class Members to exercise their rights and make informed decisions regarding their views of the fairness, adequacy and reasonableness of the proposed settlement, and provides information as to how to obtain additional information regarding this litigation and the Settlement Agreement, including how to review Plaintiffs' Motion for Attorneys' Fees.  (Sohnen Dec., Exh. 2 thereto.)

The Settlement Agreement provides that the Notice of Settlement be mailed no later than 20 days after receipt of the Class Members' information from Defendant, which will be delivered to the Settlement Administrator no later than 20 days after the entry of an Order Granting Preliminary Approval.  (Sohnen Dec., Exh. 1 thereto, ¶¶ 64-65.)  Plaintiffs further propose that the Class Members have 60 days after the mailing of the Class Notice within which to opt-in to the FLSA Settlement Class, challenge their dates of employment, opt-out of the California Settlement Class, or object to the Settlement, including to the requested attorney's fees, costs, and incentive awards.  (Sohnen Dec., Exh 1 thereto, ¶¶ 71-72.)  This period will be sufficient to give Class Members the opportunity to comment on the Settlement.  (*See Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1374-75 (9th Cir. 1993) (notice mailed 31 days before objection deadline was sufficient) (citing

21

*Marshall v. Holiday Magic, Inc.*, 550 F. 2d 1173, 1178 (9th Cir. 1977) (approving timing of a notice mailed 26 days before the deadline for opting out of a settlement).)  Plaintiffs' anticipate that they will file their Motion for Attorneys' Fees at approximately the same time as the Notice of Settlement and Claim Form are mailed, giving Class Members sufficient time to review and comment on that request as well.  (*In re Mercury Interactive*, 618 F.3d 988, 995 (9th Cir. 2010).)  Accordingly, the notice plan along with the accompanying Notice of Settlement and Claim Form fulfills all requirements of adequate notice and should be approved.  *See* F.R.C.P. Rule 23(c)(2)(B); Manual for Complex Litigation, 3d, §30.21.

## VII.    CONCLUSION.

In conclusion, Class Counsel recommends the following schedule for Settlement approval:

| | |
|---|---|
| Within 20 days after the date of entry of an Order granting Preliminary Approval | Defendant to provide the Settlement Administrator the most recent names, mailing addresses, phone numbers,  and social security numbers it has for all eligible Settlement Class Members, as well as any information regarding the Settlement Class Members' dates of employment and leaves of absence |
| 20 days after receipt of information from Defendant | Settlement Administrator to complete any skip trace or other address search for Class Members, including updating any Class Member contact information. |
| 20 days after receipt of information from Defendant | Mailing by first class mail of Class Action Settlement Notice and Settlement Claim Form by Settlement Administrator. |
| 60 days after mailing of Notice and Claim Form | Last day for FLSA Class Members to opt-in to FLSA Settlement Class |
| 60 days after mailing of Notice and Settlement Claim Form | Last day for Class Members to challenge dates of employment, work months, or submit written objections or opt-out of California Settlement Class. |
| 40 days after Preliminary Approval Order | Motion for Attorneys' Fees and Costs filed |

For the reasons set forth above, Plaintiffs respectfully request that the Court grant the Preliminary Approval of the Class Action Settlement.

1

Dated:  June 16, 2014                    LAW OFFICE OF MARY-ALICE COLEMAN

2                                                       LAW OFFICES OF SOHNEN & KELLY

3

4                                                       By:    /s/ Patricia M. Kelly

Patricia M. Kelly

5                                                       Attorneys for Plaintiffs ANDREA SEWELL,

CONRAD SILVA, and EDITH VIERA

6                                                       individually, and on behalf of all others

similarly situated

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28